# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 13-12404 (CSS) |
| PMGI Holdings, *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Guccione Collection, LLC, | ) | Adv. Proc. No. 13-52259-CSS |
| | ) | |
| Plaintiff and Defendant-in-Counterclaim, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FriendFinder Networks Inc., and General Media Communications, Inc. | ) | |
| | ) | |
| Defendants and Plaintiffs-in-Counterclaim. | ) | |
| | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

COME NOW Defendants and Debtors, FriendFinder Networks Inc. ("FFN"), and General Media Communications, Inc. ("GMCI", and together with FFN, the "Debtors"), by and through their undersigned counsel and respond to the Complaint for Declaratory and Other Relief asserted by Guccione Collection, Inc. (hereinafter "GC"), as follows:

---

[1] The "Debtors" in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Blue Hen Group Inc. (9667), Argus Payments Inc. (4661), Big Island Technology Group, Inc. (9795), Confirm ID, Inc. (7020), Danni Ashe, Inc. (5271), Fastcupid, Inc. (7869), Fierce Wombat Games Inc. (2019), FriendFinder California Inc. (2750), FriendFinder Networks Inc. (0988), FRIENDFINDER VENTURES INC. (3125), FRNK Technology Group (7102), General Media Art Holding, Inc. (2637), General Media Communications, Inc. (2237), General Media Entertainment, Inc. (2960), Global Alphabet, Inc. (7649), GMCI Internet Operations, Inc. (7655), GMI On-Line Ventures, Ltd. (7656), Interactive Network, Inc. (5941), Magnolia Blossom Inc. (8925), Medley.com Incorporated (3594), NAFT NEWS CORPORATION (4385), Penthouse Digital Media Productions Inc. (1056), Penthouse Images Acquisitions, Ltd. (9228), PerfectMatch Inc. (9020), Playtime Gaming Inc. (4371), PMGI Holdings Inc. (2663), PPM Technology Group, Inc. (9876), Pure Entertainment Telecommunications, Inc. (9626), Sharkfish, Inc. (1221), Snapshot Productions, LLC (7091), Streamray Inc. (2716), Streamray Studios Inc. (1009), Tan Door Media Inc. (1100),Traffic Cat, Inc. (1223), Transbloom, Inc. (1168), Various, Inc. (7762), Video Bliss, Inc. (6760), West Coast Facilities Inc. (4751), XVHUB Group Inc. (9401). The Debtors' business address is 6800 Broken Sound Parkway NW, Suite 200, Boca Raton, FL 33487.

1

*NY 371121695v10*

## NATURE OF THE ACTION

1. Admit for jurisdictional purposes only. The Debtors further admit that FFN through GMCI, and any of its wholly owned subsidiaries, own certain assets and property rights related to the intellectual property at issue in the Complaint.

2. Admit that the Debtors have asserted legal rights under the appropriate statutes and notified GC of its infringing activity.

3. GC's allegations in this regard are too vague and ambiguous to provide a meaningful response. The Debtors assert that they enjoy intellectual property rights for a variety of trademarks, service marks and copyrights which are being infringed by GC and that GC has no legally cognizable basis to assert a claim of "fair use."

4. Deny the allegations against the Debtors and assert that GC has no rights and is not entitled to any damages.

## PARTIES

5. Without knowledge, accordingly denied.

6. Admit.

7. Denied.

## JURISDICTION AND VENUE

8. Admit the Bankruptcy Court has jurisdiction and that this is an action that relates to substantial assets of the bankruptcy estate.

9. Denied.

10. Denied. This is a core proceeding and the Debtors consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent the consent of the

parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11. Admit.

## BACKGROUND

12. Admit that Bob Guccione founded Penthouse Magazine. Further admit that Mr. Guccione and the Guccione name is forever intertwined with the trademarks, service marks and goodwill purchased by the Debtors. Certain works may have been created by Mr. Guccione, but the copyrights in such works are owned by the Debtors.

13. Without knowledge as to Mr. Guccione's personal finances. Admit the Debtors own all intellectual property rights associated with the Penthouse brand and associated marks and works.

14. Without knowledge as to the actions of Mr. Frommer, accordingly denied.

15. Without knowledge as to the specific communications alleged by Mr. Frommer.

16. Admit that the Debtors filed for bankruptcy; without knowledge as to the remainder of the allegations.

17. Denied that the Debtors did anything improper.

### The Cease and Desist Letter

18. Admit that Exhibit A is a true and correct copy of communications from the Debtors to Mr. Castila, Mr. Frommer, and Complete Consignment.

19. Exhibit A speaks for itself and to the extent the allegations seeks to characterize or summarize the communications in a manner inconsistent with the Exhibit, the allegation is denied.

20. Exhibit A speaks for itself and to the extent the allegations seeks to characterize or summarize the communications in a manner inconsistent with the Exhibit, the allegation is denied.

21. Denied.

## The Takedown Notice

22. Admit Exhibit B is a true and correct copy of communications from the Debtors to Mr. Dave Anderson and UK2 Group/resell.biz.

23. Exhibit B speaks for itself and to the extent the allegations seeks to characterize or summarize the communications in a manner inconsistent with the Exhibit, the allegation is denied.

24. Exhibit B speaks for itself and to the extent the allegations seeks to characterize or summarize the communications in a manner inconsistent with the Exhibit, the allegation is denied.

25. Without knowledge as to the actions of third parties. The Debtors deny they did anything wrong.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment Against Both Defendants)

26. The Debtors re-allege their response to Paragraphs 1 through 25 above.

27. Admit that GC has and may continue to infringe intellectual property rights belonging to the Debtors.

28. Denied.

29. Admit.

30. Denied.

## SECOND CLAIM FOR RELIEF
### (Violation of 17 U.S.C. §512(f) Against Both Defendants)

31. The Debtors re-allege their response to Paragraphs 1 through 29 above.

32. Denied.

33. Without knowledge, accordingly denied.

## THIRD CLAIM FOR RELIEF
### (Tortious Interference with Contract Against Both Defendants)

34. The Debtors re-allege their response to Paragraphs 1 through 33 above.

35. Without knowledge, accordingly denied.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference with a Business Relationship Against Both Defendants)

40. The Debtors re-allege their response to Paragraphs 1 through 39 above.

41. Without knowledge, accordingly denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

## AFFIRMATIVE DEFENSES

First Affirmative Defense:

Each and every claim asserted fails to state a cause of action upon which relief may be granted.

Second Affirmative Defense:

GC in this action has purposefully, intentionally and willfully infringed upon the trademarks and copyrights owned by the Debtors, and by virtue of its own unclean hands, cannot seek equitable relief before this Court.

Third Affirmative Defense:

GC has intentionally, purposefully, and willfully infringed copyrights of the Debtors, knowing such infringing activity was illegal. As such, GC cannot be heard to complain that the Debtors took unlawful action to protect their copyright interests. All such actions are protected commercial speech.

Fourth Affirmative Defense:

GC is not entitled to any relief for actions taken by the Debtors to lawfully and legally protect the Debtors' rights to their intellectual property and utilize the protections offered by Federal law.

Fifth Affirmative Defense:

GC has not suffered any damages and/or has failed to take reasonably necessary steps to mitigate any purported damages.

Sixth Affirmative Defense:

GC is not entitled to any relief for actions taken by the Debtors to lawfully and legally protect property of the Debtors's estates pursuant to section 541(a) of title 11 of the United States Code (the "Bankruptcy Code").

## COUNTERCLAIMS

COMES NOW the Debtors and brings this action against plaintiff and defendant-in-counterclaim, GC, and in support of their claim asserts:

### Nature of the Action

1. This is an action for Declaratory Judgment, damages and injunctive relief to secure all rights of ownership in the intellectual property. The intellectual property at issue in this matter is a substantial asset of the Debtor' estate.

### Parties

2. The Debtors, plaintiffs-in-counterclaim, are the petitioners in bankruptcy and subject to the jurisdiction of this Court.

3. Defendant-in-Counterclaim, GC, purports to be a limited liability company organized under the State Laws of the State of Delaware, with its principal place of business in New Jersey and submits to the jurisdiction of this Court by virtue of filing the Complaint.

4. The Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1134(b), as it is related to the bankruptcy matters pending before this Court.

5. This is a core proceeding to determine assets of the Debtors' estates and the rights associated with such assets. The Debtors consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### Facts

**A.   The Debtors' Bankruptcy Cases**

6. On September 17, 2013 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the

7

United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

7.  The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not been appointed in these Chapter 11 Cases.

**B.  The Gucionne Adversary Proceeding**

8.  The Debtors are the lawful owner of numerous trademarks, service marks and copyrights associated with the well-known media empire Penthouse, founded by Bob Guccione. Since 1969, Penthouse Magazine has been an international success. Created by Bob Guccione in a small apartment in London, U.K., the publication grew to an empire recognized by Vanity Fair Magazine as being "among the greatest success stories in the history of American magazines." The Penthouse trademark achieved fame over many decades of substantial success – its magazines included famous celebrities and inspired photography, eventually becoming synonymous with astute journalism and quality entertainment.

9.  The Penthouse fame and brand has expanded to a multi-media entertainment complex, including a social networking company, on-line services, consumer products, and clothing. Today, an estimated 20 million people each month are exposed to the Penthouse brand.

10.  The Debtors have never authorized or otherwise permitted GC to use any trademarks, copyrights or other property interests associated with Penthouse or the Debtors.

11.  Obviously desirous of associating with the famous mark, GC has promoted its sale of goods and services in a manner designed to suggest an association, affiliation, or

8

relationship between GC and the Debtors' famous marks.  In an effort to head off consumer confusion, the Debtors notified GC of its illegal activity.

12. The acts of infringement have caused dilution of the famous marks.

13. The acts of infringement have caused substantial monetary damages.

14. The acts of infringement, if not enjoined, could cause irreparable injury to the marks, the goodwill associated with the marks, and the Debtors' ability to control its marks.

## COUNT I
### (Bankruptcy Code Section 541(a) Declaratory Judgment – "Caligula")

15. The Debtors repeat, re-allege and incorporate each and every allegation contained in paragraphs 1 through 14 of these Counterclaims with the same force and effect as though fully set forth herein.

16. This cause of action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

17. An actual controversy exists between the Debtors and GC regarding the right to use "Caligula" and derivations thereof.

18. As of the Petition Date, the Debtors owned copyrights to "Caligula" and derivations thereof.

19. As of the Petition Date, the Debtors enjoyed the trademark rights to the marks "Caligula" and "Caligula Films."

20. The Debtors have never authorized, licensed or otherwise permitted GC to display, copy, transmit, distribute, perform or otherwise use the copyrighted work "Caligula" or any derivations thereof.

21. The Debtors have never authorized, licensed or otherwise permitted GC to display, transmit, distribute, perform or otherwise use the trademarked marks "Caligula" or "Caligula Films."

22. GC has infringed upon the Debtors' rights to the "Caligula" copyrights and the "Caligula" and "Caligula Films" trademarks.

23. As a direct and proximate cause of the illegal actions of GC, the Debtors' estates have suffered monetary damages.

24. Monetary damages are inadequate and injunctive relief is needed to avoid irreparable injury.

25. The acts complained of herein have been, upon information and belief, willful and intentional.

**COUNT II**
**(Bankruptcy Code Section 541(a) Declaratory Judgment – "The Locket")**

26. The Debtors repeat, re-allege and incorporate each and every allegation contained in paragraphs 1 through 25 of these Counterclaims with the same force and effect as though fully set forth herein.

27. This cause of action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

28. An actual controversy exists between the Debtors and GC regarding the right to use "The Locket" and derivations thereof.

29. As of the Petition Date, the Debtors owned copyrights to the film "The Locket" and derivations thereof.

NY 371121695v10

30. The Debtors have never authorized, licensed or otherwise permitted GC to display, copy, transmit, distribute, perform or otherwise use the copyrighted work "The Locket" or any derivations thereof.

31. GC has infringed upon the Debtors' rights to the "The Locket" copyrights.

32. As a direct and proximate cause of the illegal actions of GC, the Debtors' estates have suffered monetary damages.

33. Monetary damages are inadequate and injunctive relief is needed to avoid irreparable injury.

34. The acts complained of herein have been, upon information and belief, willful and intentional.

## COUNT III
### (Bankruptcy Code Section 541(a) Declaratory Judgment – "Penthouse")

35. The Debtors repeat, re-allege and incorporate each and every allegation contained in paragraphs 1 through 34 of these Counterclaims with the same force and effect as though fully set forth herein.

36. This cause of action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

37. An actual controversy exists between the Debtors and GC regarding the right to use "Penthouse" and derivations thereof.

38. As of the Petition Date, the Debtors owned copyrights to various pictorial works known as "Penthouse Pets" and derivations thereof.

39. As of the Petition Date, the Debtors enjoyed the trademark rights to the marks "Penthouse" and "Penthouse Pet."

40. The Debtors have never authorized, licensed or otherwise permitted GC to display, copy, transmit, distribute or otherwise use the copyrighted various pictorial works known as "Penthouse Pets" or any derivations thereof.

41. The Debtors have never authorized, licensed or otherwise permitted GC to display, transmit, distribute or otherwise use the trademarked marks "Penthouse" or "Penthouse Pets."

42. GC has infringed upon the Debtors' rights to the "Penthouse Pets" copyrights and the "Penthouse" and "Penthouse Pets" trademarks.

43. As a direct and proximate cause of the illegal actions of GC, the Debtors' estates have suffered monetary damages.

44. Monetary damages are inadequate and injunctive relief is needed to avoid irreparable injury.

45. The acts complained of herein have been, upon information and belief, willful and intentional.

## COUNT IV
### (Copyright Infringement)

46. The Debtors repeat, re-allege and incorporate each and every allegation contained in paragraphs 1 through 45 of these Counterclaims with the same force and effect as though fully set forth herein.

47. The Debtors own copyrights to "Caligula" and derivations thereof. GC has offered public viewing of the film "Caligula" to the consuming public for a fee. This activity is in violation of the Debtors' copyright and is an unauthorized display of the film.

48. The Debtors own copyright to the film "The Locket" and derivations thereof. GC displayed, showed, and permitted the public to watch the film in violation of the Debtors' rights under the Copyright Act.

49. The Debtors own the copyright to various pictorial works known as "Penthouse Pets" and derivations thereof. GC has offered for sale copies of the copyrighted works. This activity is in violation of the Copyright Act.

50. As a direct and proximate cause of the illegal actions of GC, the Debtors have suffered monetary damages.

51. Monetary damages are inadequate and injunctive relief is needed to avoid irreparable injury.

52. The acts complained of herein have been, upon information and belief, willful and intentional.

## COUNT V
### (Trademark Infringement)

53. The Debtors repeat, re-allege and incorporate each and every allegation contained in paragraphs 1 through 52 of these Counterclaims with the same force and effect as though fully set forth herein.

54. The Debtors enjoy the rights to the marks "Penthouse," "Caligula," "Caligula Films," and "Penthouse Pet."

55. GC promotes its merchandise, products, and services utilizing the marks owned by the Debtors.

56. The use of such marks is unauthorized and is in violation of the rights associated with those marks.

57. The use of the marks is likely to deceive or confuse the consumers and prospective customers.

58. Upon information and belief, GC's illegal use of the marks is willful, intentional, and done with the intent to trade upon the goodwill associated with the marks.

## COUNT VI
### (Violation of 15 U.S.C. §1125)

59. The Debtors repeat, re-allege and incorporate each and every allegation contained in paragraphs 1 through 58 of these Counterclaims with the same force and effect as though fully set forth herein.

60. GC has utilized the Debtors' marks, words, terms, names, symbols or combinations thereof to create a false impression in the mind of the consuming public that the products and services offered for sale by GC are associated with or affiliated with the famous marks owned by the Debtors.

61. GC's actions are likely to cause confusion, mistake, or deceive the consuming public as to the affiliation or association with the Debtors.

62. GC's actions and use of the Debtors' marks, words, terms, names or symbols are designed to and likely cause mistake as to the origin, sponsorship or approval of GC's goods, services or commercial activity.

63. The "Penthouse" and "Caligula" marks are famous marks. GC's use of these famous marks tends to dilute the fame of the mark and may impair the distinctiveness of the marks or tarnish the goodwill associated with the marks.

64. GC's actions constitute violation of 15 U.S.C. §1125, *et seq*.

65. As a direct and proximate result of GC's activities, the Debtors have suffered substantial monetary damages.

66. Monetary damages are inadequate to fully compensate the Debtors for the injuries suffered. To avoid irreparable injury, injunctive relief is required.

## COUNT VII
### (Common Law Unfair Competition)

67. The Debtors repeat, re-allege and incorporate each and every allegation contained in paragraphs 1 through 66 of these Counterclaims with the same force and effect as though fully set forth herein.

68. GC's actions constitute unfair competition.

69. As a direct and proximate cause of GC's actions, the Debtors have suffered substantial monetary damage.

70. Monetary damages are inadequate to fully compensate the Debtors for the injuries suffered. To avoid irreparable injury, injunctive relief is required.

71. Upon information and belief, the action of GC are willful, intentional, malicious and in blatant disregard of the rights of the debtors.

WHEREFORE, the Debtors request that this Court:

A. Grant judgment in favor of the Debtors on all Counts;

B. Grant declaratory relief in favor of the Debtors on Counts I-III and enter an order pursuant to Bankruptcy Code section 541(a) declaring that:

   i. The "Caligula" copyrights and the "Caligula" and "Caligula Films" trademarks are property of the Debtors' estates;

   ii. The "The Locket" copyrights are property of the Debtors' estates;

   iii. The "Penthouse Pets" copyrights and the "Penthouse" and "Penthouse Pets" trademarks are property of the Debtors' estates;

C. Consistent with Count IV, grant a preliminary and then permanent injunction in favor of the Debtors;

D. Consistent with Count V, grant a preliminary and then permanent injunction in favor of the Debtors;

E. Consistent with Count VI, grant a preliminary and then permanent injunction in favor of the Debtors;

F. Consistent with Count VII, grant a preliminary and then permanent injunction in favor of the Debtors;

G. Order the destruction of any infringing articles;

H. Award the Debtors compensatory damages;

I. Disgorge any related GC profits;

J. Consistent with Counts IV-VI, award the Debtors enhanced damages for GC's willful infringement of the Debtors' trademarks and copyrights;

K. Consistent with Counts IV, VI and VII, award the Debtors statutory damages;

L. Award the Debtors punitive damages for GC's willful violation of the automatic stay;

M. Award the Debtors prejudgment interest;

N. Award the Debtors attorneys' fees and costs; and

O. Grant such other and further relief as this Court deems just and proper.

NY 371121695v10

| | |
|---|---|
| Dated: October 25, 2013 | GREENBERG TRAURIG, LLP |
| | |
| | /s/ *Dennis A. Meloro* |
| | Dennis A. Meloro (DE Bar No. 4435) |
| | The Nemours Building |
| | 1007 North Orange Street, Suite 1200 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 661-7000 |
| | Facsimile: (302) 661-7360 |
| | Email: melorod@gtlaw.com |
| | |
| | -and- |
| | |
| | Joseph P. Davis III |
| | One International Place |
| | Boston, Massachusetts 01929 |
| | Telephone: (617) 610-6000 |
| | Facsimile: (617) 310-6001 |
| | Email: davisjo@gtlaw.com |
| | |
| | -and- |
| | |
| | Nancy A. Mitchell |
| | Paul T. Martin |
| | Greenberg Traurig, LLP |
| | MetLife Building |
| | 200 Park Avenue |
| | New York, NY 10166 |
| | Telephone: (212) 801-9200 |
| | Facsimile: (212) 801-6400 |
| | Email: mitchelln@gtlaw.com |
| |       martinpt@gtlaw.com |
| | |
| | -and- |
| | |
| | ALLEN, DYER, DOPPELT, MILBRATH & GILCHRIST, P.A. |
| | Brian Gilchrist |
| | 255 South Orange Avenue, Suite 1401 |
| | Orlando, Florida 32801 |
| | Telephone: (407) 841-2330 |
| | Facsimile: (407) 841-2343 |
| | Email: bgilchrist@addmg.com |
| | |
| | *Counsel for the Debtors and Debtors-in-Possession* |